# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA W. WILEY, ) | |
| ) | Civil Action No. 18-1207-CRE |
| Plaintiff, ) | Chief Magistrate Judge Cynthia R. Eddy |
| ) | |
| v. ) | |
| ) | |
| WORLD WRESTLING ) | |
| ENTERTAINMENT, INC., VINCE ) | Electronically Filed |
| MCMAHON and JOHN DUE ) | |
| ) | |
| Defendants. ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)

**K&L GATES LLP**
Jerry S. McDevitt (PA Bar No. 33214)
Curtis B. Krasik (PA Bar No. 81150)
Christopher M. Verdini (PA Bar No. 93245)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
T: 412.355.6500
F: 412.355.6501
jerry.mcdevitt@klgates.com
curtis.krasik@klgates.com
christopher.verdini@klgates.com

*Counsel for Defendants World Wrestling Entertainment, Inc. and Vince McMahon*

\

Defendants World Wrestling Entertainment, Inc. ("WWE") and Vince McMahon (collectively, "Defendants") respectfully submit this brief in support of their motion to dismiss Plaintiff's Amended Complaint (Dkt. 7).[1]

## I. BACKGROUND

Although largely unintelligible, the crux of the pro se amended complaint filed in this matter appears to be that, on August 21, 1995, Plaintiff Dana W. Wiley ("Wiley") allegedly entered into a "copyright contract" with Defendants for his "brand trademark name D-Generation X and NWO t-shirt's and other merchandise" in exchange for Defendants paying Wiley $75 million.  *See* Amended Complaint, Statement of Facts ¶ 1.  Wiley, however, was sentenced to prison on May 1, 1995 for five to twenty years for armed robbery, and on August 21, 1995 — the very same day he claims to have entered into a $75 million contract with WWE — he was sentenced in another matter for a consecutive three to six years.  *See* Memorandum and Order at 1, *Wiley v. U.S. Gov't Officials*, Case No. 2:12-cv-1380, Dkt. 13 (W.D. Pa. Nov. 1, 2012) (Mitchell, M.J.) (attached hereto as Exhibit 1).  He, therefore, could not plausibly have entered into such a contract with Defendants on that date.

On the date he supposedly entered into the "copyright contract" with Defendants, Wiley actually was in the Lawrence County Jail for the sentencing hearing on his conviction for aggravated assault and then was transferred to the State Correctional Institution at Greene ("SCI-Greene") where he remained to serve out his sentence.  *See id.*; Ex. 2 at 5-6 of 28 (Court of Common Pleas of Lawrence County Criminal Docket for *Commonwealth of Pa. v. Dana Wiley*,

---

[1] Plaintiff also named "John Due" defendants identified as "D-Generation X and NWO Wrestling Employee's [sic]."  No such entities exist.  To the extent Plaintiff's Amended Complaint is interpreted to refer to WWE employees, the arguments set forth herein require dismissal as to those "John Due" defendants as well.

1

CP-37-CR-0001144-1994).[2]  Accordingly, it is utterly implausible, and indeed impossible, that Wiley entered into a "copyright contract" with Defendants on August 21, 1995 while he was in prison.

Significantly, during his time in prison, Wiley was found by a federal judge to be "irrational and delusional."  *See* Memorandum at 4, *U.S. v. Wiley*, Criminal No. 3:CR-02-160, (M.D. Pa. Sept. 8, 2003), filed in *In re: Dana Wiley*, 13-4029 (3d Cir. October 8, 2013) (attached hereto as Exhibit 3).  In connection with an indictment against Wiley for assaulting a corrections officer, the Honorable A. Richard Caputo of the U.S. District Court for the Middle District of Pennsylvania ruled that Wiley was not competent to stand trial due to his "continued irrational and delusional behavior."  Specifically, and as particularly pertinent here, Judge Caputo noted that Wiley

> intended to defend the charges by proving the mass government conspiracy against him.  He intends to call numerous celebrities and political leaders as witnesses to prove this conspiracy. He also reiterated that he personally knew many of these people.  Mr. Wiley made a special point of clarifying that Dr. Schultz's report was incorrect when it reported that Mr. Wiley said he had not met these famous people and he only made up the stories to draw attention to himself. . . . Mr. Wiley has a mental health history dating back to his teenage years.  Dr. Schultz's report states that there was 'no noticeable decrease in Mr. Wiley's occasional comments about knowing famous people or feeling conspired against.'

*Id.*  The Amended Complaint in this case is just another iteration of such behavior by Mr. Wiley.

Wiley's irrational and delusional behavior was likewise evident in an "emergency petition for review" that he filed in 2013, in which he claimed that he had been granted a pardon

---

[2] The Court may consider and take judicial notice of the docket sheets and court records of Wiley's case in state court.  *Ingram v. Fish*, 2010 WL 3075747, at *3 (W.D. Pa. Aug. 5, 2010).  *See also Wood v. Pa. Bd. of Probation and Parole*, 2009 WL 1913301, at *3 (W.D. Pa. July 2, 2009) ("In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).") (taking judicial notice of a Pa. Supreme Court docket).

of his criminal offenses by former-President Bill Clinton and former-Governor Tom Ridge. *See* Emergency Petition for Review at Exhibit A, filed in *In re: Dana Wiley*, Case No. 13-4029 (3d Cir.) (attached hereto as Exhibit 4). In that filing, Mr. Wiley made bizarre claims about (a) "[c]opyrights to the hard drive disc of the August 21, 1995 entertainment/news broadcast on these networks, C-span, CNN, PBS, Court TV, MTV and BET between 1 and 5 p.m. of the racism death threats made by Lawrence County Common Pleas Pennsylvania [sic] Honorable Judge Glenn McCracken Jr. et al. officials toward Mr. Wiley" and (b) "several millions of dollars in treasury check (totaling 75 million) the former President Clinton, et al. officials mailed-deposited to complainant same dates from the White House back in October 94'." *Id.* at Ex. A, p. 2. Thus, in that filing, he alleged vague copyright claims arising on August 21, 1995, the same date he claims here to have entered into a $75 million contract with WWE, which is the same amount he claimed President Clinton had mailed him.

Wiley's Amended Complaint is just the latest manifestation of his long-standing and unfortunate mental health issues. In addition to being wholly implausible, Wiley's claims for copyright infringement, trademark infringement, and breach of contract are legally untenable and should be dismissed for the reasons described herein.

## II.  ARGUMENT

### A.  Legal Standard

To survive a Rule 12(b)(6) challenge, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept well-pled factual allegations as true but is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). Although the court employs less stringent standards when considering pro se pleadings than when judging the work

product of an attorney, "pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim." *Williams v. Ferdarko*, Case No. 1:17-cv-313, 2018 WL 3653272, at *1-2 (W.D. Pa. Aug. 1, 2018). Thus, a "pro se complaint must be dismissed if it does not allege 'enough facts to state a claim for relief that is plausible on its face.'" *N'Jai v. Berryhill*, Case No. 18-cv-1616, 2018 WL 6697677, at *1 (W.D. Pa. Dec. 20, 2018) (quoting *Twombly*, 550 U.S. at 556).

Because Wiley's claim that he entered into a "copyright contract" with Defendants on August 21, 1995 is not plausible on its face, his Amended Complaint should be dismissed as a matter of law pursuant to Rule 12(b)(6).

  **B.**  **Wiley's Copyright Claim Should Be Dismissed**

To the extent Wiley's Amended Complaint can be interpreted to assert a copyright infringement claim against Defendants, Wiley's copyright claim must be dismissed for the following three reasons.

***First***, as the United States Supreme Court recently affirmed in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), 17 U.S.C. § 411(a) "bars a copyright owner from suing for infringement until 'registration . . . has been made.'" Wiley does not allege that he owns any copyright registrations and as such, he cannot state a claim for copyright infringement against Defendants. *See, e.g.*, *Markantone v. Podiatric Billing Specialists, LLC*, Case No. 14-cv-215, 2014 WL 2605361, at *3-4 (W.D. Pa. June 9, 2014) (granting motion to dismiss copyright infringement claim where plaintiff failed to allege copyright registration).

***Second***, Wiley fails to identify any work that is eligible for copyright protection making it impossible for him to state a plausible claim for copyright infringement. Construed liberally, Wiley identifies in his Amended Complaint the names "D-Generation X" and "NWO" as the

4

"copyright work." *See* Amended Complaint, Exhibit A at "Statement of Facts." It is black-letter law that short phrases, like D-Generation X or NWO, are not copyrightable. *See*, *e.g.*, *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285-87 (3d Cir. 2004) (collecting cases).

***Third***, in the first "paragraph" of his Amended Complaint, Wiley seems to invoke two provisions of the Copyright Act, 17 U.S.C. §§ 1004 and 114(G)(2). Those provisions, however, concern (1) "Digital Audio Recording Devices" (§ 1004) and (2) "sound recordings" (§ 114). Wiley has not identified any digital musical recordings or sound recordings in his Amended Complaint and has not alleged that Defendants reproduced any digital music recordings or sound recordings of any type. Accordingly, any claim for violation of §§ 1004 and 114(G)(2) is implausible and must be dismissed.

### C.     Wiley's Trademark Infringement Claim Should Be Dismissed

To the extent Wiley has attempted to assert a trademark infringement claim under the Lanham Act (15 U.S.C. § 1114 or § 1125) for Defendants' use of D-Generation X or NWO, the Court should dismiss that claim because he has not alleged sufficient facts to establish he is the owner of any trademarks.

To succeed on a claim for trademark infringement or unfair competition under the Lanham Act, Wiley must prove that: (1) he owns the marks at issue; (2) the marks are valid and legally protectable; and (3) Defendants' use of the mark is likely to create confusion. *See Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001). Wiley has not alleged facts to establish the necessary ownership rights to assert a trademark infringement claim. To establish ownership of trademark rights, a plaintiff must allege either a trademark registration or facts to plausibly establish that he used the mark in commerce. *See*, *e.g.*, *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). Here,

Wiley fails to allege any facts that could establish that he used D-Generation X, NWO or any other trademarks in commerce.

On the contrary, WWE is the owner of valid and subsisting trademark registrations for D-Generation X (U.S. Registration No. 3,728,991) and NWO New World Order (U.S. Registration Nos. 2,993,019 and 4,875,586).[3]  Those registrations constitute prima facie evidence that WWE — not Wiley — owns rights in those marks.  *See* 15 U.S.C. § 1115(a).  Because Wiley has not and cannot assert ownership of valid trademark rights in either D-Generation X or NWO, the Court should dismiss Wiley's Amended Complaint as to any trademark infringement claim.

D.     **Wiley's Breach of "Copyright Contract" Claim Should Be Dismissed**

Wiley's claim for breach of contract must be dismissed because (1) his allegations of the existence of a contract are implausible and (2) he has failed to allege the material terms of any supposed contract.

To state a plausible claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Bill Goodwin Const., LLC v. Wondra Const., Inc.*, Case No. 3:13-cv-157, 2014 WL 1415078, at *8 (M.D. Pa. Apr. 10, 2014).  For a contract to exist, "the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain." *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 977 F. Supp. 2d 462, 467 (E.D. Pa. 2013).  "Whether the terms are sufficiently definite is a question of law" and "[t]he burden of proving the existence of a contract lies with the party relying on its existence." *Id.*  Here, Wiley fails to set forth factual allegations to plausibly plead the existence of a contract

---

[3] The Court can take judicial notice of WWE's trademark registrations.  *See*, *e.g.*, *Bath Authority, LLC v. Anzzi LLC*, 18-00834, 2018 WL 5112889 at *4 n.3 (E.D. Pa. Oct. 19, 2018) (taking judicial notice of application for federal registration trademark) (citing *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004)).

6

with Defendants or its material terms.

Wiley contends that he and Defendants entered into the "copyright contract" on August 21, 1995. In determining whether Wiley has asserted a plausible claim for the existence of such a contract, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016). In performing that analysis, the Court should reject allegations that "make no sense," "render a claim incoherent" or are contradicted by other allegations. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001); *Wade v. Kay Jewelers, Inc.*, Case No. 3:17-cv-990, 2018 WL 4440532, at *2 (D. Conn. Sept. 17, 2018) (same); *Haber v. Rabin*, Case No. 1:16-cv-546, 2016 WL 3217869, at *4 (N.D. Ohio June 10, 2016) (same); *Mariniello v. LPL Fin. LLC*, Case No. 14-cv-956, 2014 WL 3844845, at *5 (D.N.J. Aug. 5, 2014) (same). Under these well-established standards, Wiley's assertion that he and Defendants entered into a contract is implausible.

As noted above, it is implausible that Wiley entered into a "copyright contract" with Defendants on August 21, 1995 in the first instance because he was in prison on that date. As further demonstrated above, Wiley does not own any copyrights or trademarks and consequently there was nothing Wiley owned which could form the basis of a contract with Defendants.

Additionally, Wiley fails to allege facts that establish the formation of a contract. Among other things, Wiley fails to allege (a) any specific communications with Defendants; (b) how he supposedly communicated with Defendants; (c) when he supposedly communicated with Defendants; (d) how he knew whom to contact to communicate with Defendants; (e) the person(s) with whom he supposedly communicated on behalf of Defendants; (f) whether the supposed contract with Defendants was oral or in writing; and (g) the circumstances that led to

him supposedly entering into a contract with Defendants.

Finally, Wiley fails to allege facts to establish the material terms of a "copyright contract" with Defendants.  Specifically, Wiley (1) fails to allege what obligations he had under the purported contract and (2) makes inconsistent assertions about Defendants' obligations under the contract.  In the Amended Complaint, Wiley asserts that the "copyright contract" provided for Defendants to pay $75 million "for his brand trademark name D-Generation X NWO T-Shirts and other merchandise."  *See* Amended Complaint, Statement of Facts ¶ 1.  In his July 12, 2018 "Cease and Desist Notice" attached as Exhibit A to the Amended Complaint, however, Wiley claimed that the contract required Defendants to pay him "a sum of $3 million a year for life time payment."  *Id.* at Exhibit A.  But, in another formulation of the alleged contract described in his March 9, 2011 letter to WWE that is also part of Exhibit A, Wiley wrote that the contract provided for an "investment of seventy $75 million dollars into WWE stock market along with TNA Impact" and to pay him "over three $(3) or more million dollars a year."  *Id.* at Page 2 of 1.  The letter also refers to a payment of $51 million "follow [sic] by lifetime cash payments of three $3 million dollars a year."  *Id.* at Page 3 of 1.

As Wiley's own allegations cannot plausibly establish that he and Defendants agreed upon any material terms of any supposed agreement, his claim must be dismissed.  *See Geesey v. CitiMortgage, Inc.,* 135 F. Supp. 3d 332, 344 (W.D. Pa. 2015) (dismissing breach claim for failure to allege essential terms); *TruePosition*, 977 F. Supp. 2d at 470 (granting motion for judgment on pleadings because allegations were "too indefinite to support the formation of a contract."); *Sloan v. Frascella*, Case No. 12-cv-3609, 2013 WL 4433366, at *4 (E.D. Pa. Aug. 16, 2013) (plaintiff "failed to identify the material terms of the agreement, such as what her alleged 5% interest entitled her to, under what circumstances any profits would be distributed,

and how those profits would be determined").

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request Wiley's Amended Complaint be dismissed with prejudice.

Dated: April 23, 2019                                                    Respectfully submitted,

**K&L GATES LLP**

/s/ *Christopher M. Verdini*
Jerry S. McDevitt (PA Bar No. 33214)
Curtis B. Krasik (PA Bar No. 81150)
Christopher M. Verdini (PA Bar No. 93245)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
T: 412.355.6500
F: 412.355.6501
jerry.mcdevitt@klgates.com
curtis.krasik@klgates.com
christopher.verdini@klgates.com

*Counsel for Defendants World Wrestling Entertainment, Inc. and Vince McMahon*

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 23, 2019 the foregoing was filed electronically.  In addition, I hereby certify that a copy of the foregoing was sent by first-class mail to Plaintiff at the following address of record:

>Dana W. Wiley
>531 Case Street, Apt. 9
>Rochester, PA 15074

>/s/ Christopher M. Verdini
>K&L Gates LLP
>K&L Gates Center
>210 Sixth Avenue
>Pittsburgh, PA 15222-2613
>412.355.6500